**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
HERBERT S. GREEN, JR.,        )
                              )
            Plaintiff,        )
                              )
       v.                     )  Civ. Action No. 03-1984 (EGS)
                              )
ELAINE CHAO, Secretary,       )
U.S. Department of Labor      )
                              )
            Defendant.        )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Herbert S. Green, a 61-year-old African-American employee of the U.S. Department of Labor, brings this complaint under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, claiming that his 2001 non-selection for a promotion in the Employment Training Agency ("ETA"), in favor of a 34-year-old white candidate, was motivated by unlawful discrimination.  Defendant has filed for summary judgment, claiming that plaintiff has failed to produce any evidence that unlawful factors played a part in the Agency's hiring decision.  On January 7, 2005, plaintiff filed a one-page cross-motion for summary judgment, claiming that defendant has no

1

basis to claim there was a justifiable reason for its hiring decision.  After careful consideration of the parties' motions, the responses and replies thereto, and for the following reasons, the Court finds that plaintiff has failed to allege facts sufficient to allow a reasonable jury to conclude that plaintiff was the victim of intentional discrimination.  Therefore, defendant's Motion for Summary Judgment will be **GRANTED** and this case will be **DISMISSED WITH PREJUDICE.**

I.   BACKGROUND

Plaintiff Herbert S. Green, Jr., was a GS-13 Program Analyst and a 23-year veteran of the U.S. Department of Labor's Employment Training Administration ("ETA") when he filed his application for the position of a GS-14 Manpower Development Specialist in the Office of Youth Opportunities in May 2001. After the application period closed, ETA's Office of Human Resources certified a list of three eligible candidates who met the minimum qualifications for the position.  Human Resources then forwarded the certificate, which included Mr. Green, to Ms. Irene Lynn, ETA's Director of the Office of Youth Opportunities and selecting official for the position.  Ms. Lynn interviewed each of the eligible candidates, and ultimately selected Greg Weltz, a 34-year-old white male, for the position.

The Agency notified plaintiff of its decision on June 19, 2001.  One week later, Mr. Green requested the Agency's rationale for the hiring decision.[1]  Ms. Lynn responded with a letter describing Mr. Weltz's qualifications as they specifically related to the evaluation factors listed on the job vacancy listing.  *See* Def's. Mot. Ex. 7.  In particular, Ms. Lynn cited Mr. Weltz's "expertise in youth programming under the Workforce Investment Act," and "extensive experience in developing and delivering technical assistance to grantees, particularly those at the local level."  *Id.*

On August 6, 2001, plaintiff filed an informal complaint with the Department, asserting that he believed Ms. Lynn's decision was motivated by discrimination on the basis of race and age.  After filing a formal complaint of employment discrimination, and having failed to obtain administrative relief, plaintiff filed the present action.

---

[1] The collective bargaining agreement governing merit staffing at the Department of Labor provides that "within ten (10) workdays after an employee who is a candidate has been notified of his/her nonplacement," he or she "may request a review and an explanation of nonplacement" from the Agency.  *See* Agreement between Local 12, AFGE, AFL-CIO and the U.S. Dep't of Labor (effective March 15, 1992), Art. 16, Sec. 10(b)(1).

**II. DISCUSSION**

**A.   Standard of Review**

This case is before the Court on the parties' cross-motions for summary judgment.  Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

In addition, a district court "is under no obligation to sift through the record ... in order to evaluate the merits of [a] party's case."  *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 154 (D.C. Cir. 1996).  Rather,

consistent with Local Civil Rule 7(h), a court determining whether to grant summary judgment may rely on the parties' separate statements of material facts and the record material they reference, and may "treat as admitted all facts not controverted" in the statement of genuine issues filed in opposition to the motion.  *See Waterhouse,* 298 F.3d at 992.

### B. McDonnell Douglas Framework

Title VII makes it unlawful for an employer "to fail or refuse to hire ... or otherwise discriminate against any individual" because of such individual's race.  *See* 42 U.S.C. § 2000e-2(a)(1).  The ADEA contains a nearly identical prohibition on discriminatory employment practices based on an individual's age.  *See* 29 U.S.C. § 623(a)(1).

Because "there will seldom be 'eyewitness testimony' as to an employer's mental processes," *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983), courts often employ a variant of the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to analyze discrimination cases based on circumstantial evidence.  *See, e.g., Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004); *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999) (applying framework to ADEA claims).

Under the now familiar *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of prohibited discrimination by showing that "(1) he is a member of a protected class; (2) he applied for and was qualified for an available position; and (3) despite his qualifications, he was rejected." *Stewart v. Ashcroft,* 352 F.3d 422, 428 (D.C. Cir. 2003).

If the plaintiff succeeds in establishing a prima facie case, the burden "shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment decision." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998).  If the defendant meets this burden, then the presumption of discrimination raised by the prima facie showing is rebutted and "drops from the case." *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

Although the intermediate evidentiary burdens shift back and forth under this framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.  In attempting to satisfy this burden, the plaintiff must be afforded an "opportunity to prove ... that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*  In order to survive summary judgment, "the plaintiff must show that a reasonable jury

6

could conclude that [he] was terminated for a discriminatory reason." *Waterhouse*, 298 F.3d at 992; *see Aka*, 156 F.3d at 1290.

### C. Application of the Framework to the Facts

Because plaintiff has not offered direct evidence of discrimination, he must proceed under the *McDonnell Douglas* formula. Defendant concedes that plaintiff can establish a prima facie case of race and age discrimination: 1) he is African-American and was over 40 years of age at the time of the selection; 2) he applied for and was qualified for the position; and 3) he was passed over in favor of a white candidate that was 28 years younger. *See* Def's. Mem. at 4-5. Thus, the burden shifts to defendant to articulate legitimate nondiscriminatory reasons for the Agency's hiring decision. *See Burdine*, 450 U.S. at 255.

In her February 2002 affidavit for the EEO investigation, Ms. Lynn stated that Mr. Weltz "was very well qualified for the job," and that he fit the Agency's needs for a candidate "with knowledge of employment and training programs, experience in project management and project leadership, experience in developing and delivering technical assistance to State and/or local youth program operations; ability to plan, organize, and direct complex projects; and the ability to communicate

effectively, both orally and in writing." Def's. Mem. Ex. 9 at 3.

Specifically, Lynn cited Weltz's experience as a Manpower Development Specialist in the office since 1998 and described his service on the WIA policy development committee tasked with reviewing and clearing policy documents related to WIA implementation. *Id.* She also mentioned his work on a team responsible for developing the WIA youth regulations and his service as a youth specialist on an interdepartmental team working with the Congress in an attempt to enact job training reform. *Id.* at 3-4. According to Ms. Lynn, this experience "clearly demonstrated" Mr. Weltz's "comprehensive knowledge of employment and training programs, with particular expertise in youth programs." *Id.*

Lynn also described Weltz's "demonstrated experience in project management and project leadership," including his work "designing the implementation of a MIS initiative," his "development of a program assessment review guide" for large scale grant initiatives, and his "lead role in developing the technical assistance strategy for Youth Opportunity grants." *Id.* at 4-5. Finally, Lynn observed that Mr. Weltz demonstrated "an exceptional ability in planning, organizing, and directing complex projects" and "outstanding communication skills." *Id.*

Regarding Mr. Green's candidacy, Ms. Lynn found that he was "obviously qualified by having been referred to me for consideration," but she "[did] not believe Mr. Green demonstrated the same depth and breadth of program knowledge and experience, as did Mr. Weltz." *Id.* at 6.  In summary, Ms. Lynn stated that she "chose Mr. Weltz for the job because he was the most experienced and qualified candidate for the job." *Id.*

The Court is satisfied that defendant has proffered legitimate nondiscriminatory reasons sufficient to rebut plaintiff's prima facie case.  Thus, the Court is left with the question of whether plaintiff has alleged sufficient facts from which a reasonable jury could conclude that defendant's articulated reasons were merely pretexts for intentional discrimination.[2]  *See Burdine*, 450 U.S. at 253.

Plaintiff has provided remarkably little for the Court to evaluate.  Plaintiff's opposition to defendant's motion for summary judgment is a mere two pages long and fails to include a statement of material facts as required by Local Rule 7(h).

---

[2] The possible sources of evidence needed to survive summary judgment include "(1) plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)...." *Aka*, 156 F.3d at 1289; *see also Waterhouse*, 298 F.3d at 992-93.

Thus, the Court is entitled to treat defendant's facts as admitted.  *See* LCvR 7(h); *Waterhouse*, 298 F.3d at 992.

However, even excusing plaintiff's noncompliance with the Local Rules, there simply is no evidence to infer that the Agency's proffered nondiscriminatory reasons were false.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (finding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated").  Here, plaintiff's case appears to rest entirely on Mr. Green's assertion that defendant failed to perform a "comparative analysis" of his qualifications to those of the selectee as required under the terms of plaintiff's Collective Bargaining Agreement.  *See*, *e.g.*, Pl's. Mot. Sum. J. ¶ 2 (arguing that the Department's "intentional hiding of the comparative analysis ... is a clear basis upon which an inference of discrimination may be drawn").  By digging deeper into the record, the Court is able to discern a second theory, namely that the reasons stated for Weltz's selection did not appear as necessary qualifications on the vacancy announcement for position and only surfaced during the interviews.  Thus, according to plaintiff, they are only pretextual reasons masking the agency's true "preference" for

young white employees. *See* Def's. Mem. Ex. 10 (Plaintiff's letter to Ms. Ilga Pakalns of June 15, 2002).

However, plaintiff's allegations are based on nothing more than speculation and are completely devoid of factual support. First, it appears to the Court that Ms. Lynn's July 2001 letter to Mr. Green satisfactorily explained the rationale for her selection. *See* Def's. Mem. Ex. 7. Even if the letter does not meet the technical requirements for a "comparative analysis" within the meaning of plaintiff's Collective Bargaining Agreement--which is not an issue before the Court--it would not give rise to an inference that plaintiff was the victim of intentional discrimination. Secondly, plaintiff offers no evidence to support his personal belief that the selection process was intentionally manipulated to ensure Mr. Weltz would be chosen. *See Brown v. Brody*, 199 F.3d 446, 459 (D.C. Cir. 1999) (finding that "a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decision and avoid summary judgment").

### III. CONCLUSION

To survive summary judgment, merely conclusory allegations are not enough. *See* Fed. R. Civ. P. 56(e); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Here, even drawing all

reasonable inferences in favor of plaintiff, the Court finds that no reasonable juror could conclude that plaintiff's non-selection was motivated by intentional discrimination on account of plaintiff's race or age.  Accordingly, the Court finds that defendant is entitled to summary judgment and this case will be **DISMISSED WITH PREJUDICE.**  An appropriate Order accompanies this Memorandum Opinion.

**Signed:    EMMET G. SULLIVAN**
**            UNITED STATES DISTRICT JUDGE**
**            March 15, 2005**